**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 27 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSE R. ADAME,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner
of Social Security,

        Defendant-Appellee.

No. 00-3151
(D.C. No. 98-CV-4144)
(D. Kan.)

---

**ORDER AND JUDGMENT**   *

---

Before **EBEL, KELLY,** and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Jose Adame appeals from a district court order affirming the Commissioner's decision that he was not disabled before the expiration of his insured status on September 30, 1988, and therefore was not eligible for disability insurance benefits. We affirm.

## I.

Mr. Adame filed his application for social security disability benefits on April 28, 1995, claiming disability since December 31, 1979, due to post-traumatic stress disorder (PTSD), depression, and anxiety and panic disorder.[1] His application was denied initially and on reconsideration. Following a hearing, the ALJ denied Mr. Adame's application at step two of the five step evaluation process, *see Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988), concluding that he had no impairment except drug addiction prior to September 30, 1988, the date he was last insured for disability benefits. The Appeals Council denied review. The United States District Court for the District of Kansas adopted the magistrate judge's recommendation affirming the ALJ's decision. On appeal, Mr. Adame, acting pro se, asserts that the ALJ erred in not finding him disabled due to PTSD prior to 1988. He claims that the reason there

---

[1] The Veterans' Administration considers Mr. Adame 100% disabled. At the time Mr. Adame filed his application for social security disability benefits, he was receiving, and as far as we know is continuing to receive, benefits from the Veterans' Administration for his service-connected disability.

is no evidence that he was experiencing PTSD symptoms before 1988 was because he was in denial and because he was self-medicating the symptoms with alcohol and drugs.

## II.

Claimant, Jose Adame, served in Vietnam from 1969 to 1971. Prior to entering the service, he averred that he had never used alcohol or drugs. He began abusing both alcohol and drugs while in Vietnam. His drug and alcohol abuse continued and increased after he was discharged. In April 1987, after being arrested for possession of marijuana, he entered a Veterans' Administration rehabilitation program and, as a result, stopped using heroin, LSD, and other hard drugs. In his group therapy progress notes, the therapist observed that Mr. Adame continued to wear his beret, to dwell on the past, and was hostile and bitter about the war. He stopped attending the group therapy meetings in November 1987, and his case was closed on January 19, 1988. His participation in the group therapy during this period was considered good.

It appears from the record that, although Mr. Adame did not return to using hard drugs, he did continue to abuse alcohol and marijuana until 1993 when he was hospitalized at the Veterans Administration Medical Center (VAMC) in Dallas for a surgical repair of a Mallory-Weiss tear caused by his alcohol consumption. The record indicates that it was during this hospitalization that he

was first diagnosed as having PTSD. He was treated as an outpatient at the Dallas VAMC from August 1993 through May 1995. During this period he also completed a PTSD program at the VAMC in Topeka. The record indicates that he has remained free of drugs and alcohol. Once he was clean and sober, however, his PTSD symptoms intensified.

### III.

Mr. Adame began excessive use of alcohol and drugs while in Vietnam. Although his substance addictions have been in remission since 1993, the symptoms of PTSD and his problems with coping with that disorder became apparent at that time and have continued. According to the most recent evaluation in the record, he is considered totally disabled because of his PTSD. Therefore, the question this case presents is not whether Mr. Adame is totally disabled and unable to work, but whether the ALJ erred in finding he was not totally disabled and unable to work prior to September 30, 1988.

This court reviews the Commissioner's decision "to determine whether the findings are supported by substantial evidence and whether the [Commissioner] applied correct legal standards." *Reid v. Chater*, 71 F.3d 372, 373 (10th Cir. 1995) (quotation omitted).

Mr. Adame claims he became unable to work on December 31, 1979, due to drug and alcohol abuse related to his PTSD. The record, including the 1987

-4-

records of his court-mandated hospitalization for drug dependence, contains no evidence that Mr. Adame was experiencing symptoms of PTSD prior to September 30, 1988. Although his work history following his return from Vietnam was sporadic, and he did not remain with any one job for any length of time, he did work between 1979 and his last job in 1987. The ALJ, however, found that Mr. Adame had not engaged in any substantial gainful activity since 1979. In denying Mr. Adame's application the ALJ concluded that he had not established that he had any medically determinable severe impairment other that drug and alcohol abuse prior to September 30, 1988.

> PTSD is defined as

> the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate. . . . The person's response to the event must involve intense fear, helplessness, or horror . . . .

American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders at 424 (4th ed. 1994) (DSM-IV). The DSM-IV does indicate that PTSD can be subject to a delayed onset. *See id.* at 425. The DMS-IV states that victims of PTSD may have an increased risk of substance abuse disorders, but "[i]t is not known to what extent these disorders precede or follow the onset of Posttraumatic

-5-

Stress Disorder." *Id.* at 425.  The DMS-IV does not further mention or discuss substance abuse as symptomatic of or related to PTSD.

"An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The "key factor . . . in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol."  20 C.F.R. § 404.1535(b)(1).  The focus of the inquiry, therefore, is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause.  *See id.*

In this case, the question then becomes whether, if Mr. Adame had stopped using drugs and alcohol prior to September 30, 1988, his PTSD would have been disabling.  Mr. Adame was in drug rehabilitation from April 1987 to November 1987.  His attendance and participation in the group therapy sessions during this time was considered good, and he reported that he was remaining drug free.  There is no indication, however, that he was not using alcohol during this period.  As the ALJ found, during this period of rehabilitation participation, he did not

report any symptoms of PTSD nor did the professionals supervising his rehabilitation program report observing any of these symptoms.

In this light, the ALJ's finding that there was no substantial evidence to support Mr. Adame's claim that he was disabled by PTSD prior to September 30, 1988, cannot be found to be error. This, however, does not end our inquiry. We must address the question of whether, due to his alcohol and drug abuse and inability to hold a job, disability from PTSD can be inferred.

In November 1996, one of Mr. Adame's treating physicians, Dr. Carol Padilla, described Mr. Adame in a "Medical Assessment of Ability to do Work-Related Activities (Mental)" evaluation as:

> 100% service connected for Posttraumatic Stress Disorder which is based on his experiences as a combat soldier in Vietnam. He demonstrates all major symptoms of this disorder including more than one symptom based on persistently reexperiencing the traumatic event(s), three or more symptoms having to do with numbing of general responsiveness and all noted DSMIV manifestations of increased arousal. None of these symptoms are noted before the combat trauma.

R. Supp. Vol. I at 300. Dr. Padilla indicated that the earliest date Mr. Adame's PTSD existed at this severity level was 1970. *Id.* at 308. This is the only indication in the record that Mr. Adame may have had PTSD prior to September 30, 1988. In her decision, the ALJ acknowledged this statement by Dr. Padilla, but found that there was no evidence in the record to support a finding that Mr. Adame "had any medically determinable impairment before September

30, 1988, other than drug dependence." *Id.* at 13. In the district court's memorandum and order affirming the ALJ, the court recognized the substantial weight that must be given to the opinion of a treating physician, unless the opinion "is brief, conclusory, and unsupported by medical evidence." R. Vol. I, tab 11 at 9 (quotation omitted). The court, relying on *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) and *Hoffman v. Apfel*, 62 F. Supp. 2d 1204, 1207 (D. Kan. 1999), concluded that Dr. Padilla's retrospective diagnosis was without supporting evidence and therefore, insufficient. *Id.* at 10. We agree.[2]

In *Flint v. Sullivan*, 951 F.2d 264 (10th Cir. 1991), a case factually on point, the claimant was a Vietnam veteran with a history of drug addiction. In affirming the ALJ's denial of benefits because the claimant had not established a disability prior to the expiration of his insured status, this court rejected the claimant's arguments that a finding of disability could be based on his subjective testimony concerning the onset of PTSD and his sporadic employment history. *Id.* at 267. In so doing, we stated that although "retrospective diagnosis and subjective testimony can be used to diagnose a physical or mental condition, this

---

[2]     Even if the court accepted Dr. Padilla's retrospective diagnosis, the question is not whether Mr. Adame had PTSD prior to the expiration of his insured status, but whether he was actually disabled prior to the expiration of his insured status. *See Potter v. Secretary of Health & Human Servs.,* 905 F.2d 1346, 1348-49 (10th Cir. 1990).

type of evidence alone cannot justify an award of benefits." *Id.* The only evidence before the ALJ in *Flint*, was evidence of the claimant's drug problem and evidence that, although he had problems holding a job, he was willing to work and could find employment. This court rejected the claimant's argument that the reason his PTSD was not diagnosed until after expiration of his insured status was "because it existed in a latent state." The court agreed with the Appeals Council's reasoning that "while the onset of the claimant's impairments may be traceable to events which occurred during a period of coverage, there is no evidence to suggest that the claimant experienced disabling effects of these impairments during the relevant period." *Id.* at 267-68 (quotation omitted).

We agree with the district court that Dr. Padilla's opinion as to Mr. Adame's onset date is speculative, conclusory, and without supporting evidence. Mr. Adame made numerous trips to the VAMC during 1987 while receiving treatment and attending group therapy sessions for his drug addiction. During this time he never mentioned PTSD symptoms nor did any of his physicians or care givers observe or note any PTSD symptoms. The court concluded that, although his drug addiction and inability to hold a job provided some evidence of PTSD, they were not "'specific findings' sufficient to establish a disability." R. Vol. I, tab 11 at 10 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994)). Moreover,

Mr. Adame himself reported that his inability to meet the requirements of a job was a result of his drug and alcohol addiction.

The only remaining question is whether there was sufficient ambiguity as to the onset date of Mr. Adame's PTSD that the ALJ was required to enlist the opinion of a medical expert. In *Reid*, 71 F.3d at 373-74, this court discussed Social Security Ruling 83-20 which defines the onset date as "the first day an individual is disabled as defined in the Act and the regulations." West's Soc. Sec. Rep. Serv. Rulings 1983-91, at 49 (1992). "Factors relevant to the determination are the claimant's allegation of an onset date, his work history, and the medical evidence, with medical evidence being the primary element in determining onset date." *Reid*, 71 F.3d at 373. The *Reid* court recognized that it was sometimes necessary "to infer the onset date," and in that event, the ALJ should obtain the opinion of a medical expert at the hearing. *Id.* at 374. "However, a medical advisor need be called only if the medical evidence of onset is ambiguous." *Id.* Here, the medical evidence is not ambiguous, it is just nonexistent. Therefore, considering that a medical expert would be required to review the evidence and render a retroactive opinion, he or she could do nothing more than infer that because prior to September 30, 1988, Mr. Adame suffered from drug addiction and had trouble holding a job, and because in 1993 he exhibited the symptoms of severe PTSD, he must have had PTSD prior to September 30, 1988. Even if this

inference could be accepted as true, it still does not answer the question of whether Mr. Adame's PTSD was disabling prior to September 30, 1988.

The evidence indicates that Mr. Adame's only disabling impairment prior to the expiration of his insured status was his drug addiction. Because, under the applicable law and the regulations, this is not compensable, 42 U.S.C. § 423(d)(2)(C), 20 C.F.R. § 404.1535(b)(1), we conclude that the ALJ's decision denying Mr. Adame's application for benefits was supported by substantial evidence and in accord with correct legal standards.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge

-11-